UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:12-CV-00114-JHM-HBB

MARVIN BUTTS                                            PLAINTIFF

V.

OFFICER GEOFFREY DEIBLER,
MORGANFIELD POLICE DEPARTMENT,
CITY OF MORGANFIELD,
JIMMY LYONS, DAVID JENKINS,
BRUCIE MOORE, and MEGAN RANDOLPH                        DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on the Motion for Summary Judgment [DN 22] of Defendants

Geoffrey Deibler, the Morganfield Police Department, and the City of Morganfield (hereinafter

referred to collectively as the "Morganfield Defendants"). Fully briefed, this matter is ripe for

decision. For the following reasons, the Morganfield Defendants' motion is **GRANTED**.

I. BACKGROUND

This controversy arises out of a dispute over the sale of two "gold" buffalo bullion bars. The

dispute began on September 20, 2011, when Defendant David Jenkins visited Plaintiff's Jewelry and

Repair Store and sold Plaintiff the bars for $3,300. (Compl. [DN 1] ¶ 21.) After Jenkins left the

store, Plaintiff discovered that the bars were counterfeit. Plaintiff immediately called Jenkins, asking

him to return the money. (Id. ¶ 24.) When Jenkins asserted that he would not return the money,

Plaintiff called the Morganfield Police Department for its assistance. (Id. ¶ 25.) Officer Geoffrey

Deibler was dispatched to Plaintiff's store. On his arrival, Officer Deibler called Jenkins, advising

him to return the money, as failing to do so would constitute felony theft by deception. (Id. ¶ 26.)

Jenkins appeared reluctant to do so. Nevertheless, he agreed to come back to Plaintiff's store and

return it. (Id. ¶ 28.)

After the money's return, several events transpired that give rise to the instant cause of action. First, Detective Jimmy Lyons of the Union County Sheriff's Office called Officer Deibler, inquiring as to why he had become involved in the matter. (Id. ¶ 30; Deibler Testimony, Jury Trial Transcript [DN 22-7] 79.) Detective Lyons had talked to Jenkins' father-in-law and believed that Jenkins should not have been forced to return the money to Plaintiff. (Compl. [DN 1] ¶¶ 31–33; Deibler Testimony, Jury Trial Transcript [DN 22-7] 75.) Second, Officer Deibler returned to Plaintiff's store the following day with a criminal citation, charging Plaintiff with falsely reporting an incident. (Compl. [DN 1] ¶¶ 37, 40.) According to Plaintiff's allegations, Officer Deibler told him that Brucie Moore, the County Attorney of Union County, had received a call from Jenkins and had decided to have a citation served on him. (Id. ¶ 39.)[1] Further, Officer Deibler expressed his opinion to Plaintiff that he should plead guilty to the charged misdemeanor or take a deferment. (Id. ¶ 42.) Third, Jenkins had a small claims complaint served on Plaintiff the next day for bad business and embarrassment. (Id. ¶ 44.) According to Plaintiff's theory of the case, Moore and Officer Deibler conspired with Jenkins to serve Plaintiff a criminal citation devoid of probable cause. (Id. ¶ 66.) This was done for the purpose of getting Plaintiff to accept some sort of plea or deferment so that Jenkins could use it against Plaintiff in his small claims suit as conclusive evidence of Plaintiff's wrongdoing. (Id. ¶ 72.)

---

[1] According to Officer Deibler's testimony, Plaintiff initially informed him that the transaction had occurred between Jenkins and Plaintiff's brother-in-law, who does not know how to test gold for authenticity. However, when Officer Deibler later viewed a surveillance video, he realized it was Plaintiff and not the brother-in-law who helped Jenkins during the transaction. Officer Deibler states that this was the basis for charging Plaintiff with falsely reporting an incident. (See Deibler Testimony, Jury Trial Transcript [DN 22-7] 55, 59–60, 67–68.)

Ultimately, Jenkins' small claims complaint was dismissed for lack of jurisdiction and a jury found that Plaintiff was not guilty of falsely reporting an incident. (Id. ¶¶ 49, 62.) Plaintiff, however, has now sued Jenkins, the Morganfield Defendants, and others, alleging numerous causes of action. The Morganfield Defendants have filed a summary judgment motion. The Court considers it below.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## III. DISCUSSION

Plaintiff alleges that the Morganfield Defendants are liable under 42 U.S.C. § 1983 for the unlawful initiation and continuation of a criminal citation (Count I) and malicious abuse of process (Count II). Plaintiff also alleges that the Morganfield Defendants are liable under § 1985(3) for conspiring to deprive Plaintiff of his due process and equal protection rights (Count III). Plaintiff asserts a § 1983 cause of action against the Morganfield Police Department and City of Morganfield for failing to protect him from the defendants' actions and failing to properly train Officer Deibler (Count VI). Also, Plaintiff asserts causes of action against Officer Deibler for malicious prosecution (Count IV)[2], conspiracy to defraud (Count V), negligence and gross negligence (Count VII), malicious abuse of process (VIII), intentional infliction of emotional distress (Count IX), and defamation (Count X).

### A. COUNTS I, II, IV, AND VI: CAUSES OF ACTION BASED ON 42 U.S.C. § 1983 AGAINST THE MORGANFIELD POLICE DEPARTMENT AND OFFICER DEIBLER IN HIS OFFICIAL CAPACITY

Counts I, II, IV, and VI of Plaintiff's Complaint are brought pursuant to § 1983. They contain allegations against the Morganfield Police Department and Officer Deibler in his official capacity. The Morganfield Defendants argue that Counts I, II, and VI must be dismissed as to the Morganfield Police Department because suits against one of a city's municipal departments should be construed as being brought against the city itself. The Morganfield Defendants also argue that Counts I, II, and IV must be dismissed as to Officer Deibler in his official capacity, as official-

---

[2] The Court notes that Plaintiff does not specify in his Complaint whether he intends this cause of action to be based on § 1983 or state-law. The Morganfield Defendants assume Plaintiff intends it to be based on § 1983, (see Mem. in Supp. of Morganfield Defs.' Mot. for Summ. J. [DN 22-1] 6), and Plaintiff does not dispute the assumption. Thus, the Court will analyze this claim under § 1983.

capacity suits are to be construed in the same manner. The Court agrees.

The Sixth Circuit has held that municipal departments are not subject to suit under § 1983. See Rhodes v. McDannel, 945 F.2d 117, 120 (6th Cir. 1991) (holding that a police department is not subject to suit under § 1983); Marbry v. Corr. Med. Servs., 238 F.3d 422, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000) (holding that a jail is not subject to suit under § 1983). Therefore, the Court finds that the Morganfield Police Department is not subject to suit under § 1983. Instead, the City of Morganfield is the proper defendant, see Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690–91 (1978) (holding that a municipality can be properly sued under § 1983), and the Court will construe Plaintiff's claim against the Morganfield Police Department as a claim against the City of Morganfield itself. See Smallwood v. Jefferson Cnty. Gov't, 743 F. Supp. 502, 503 (W.D. Ky. 1990) (construing claims against the Jefferson County Government, Jefferson County Fiscal Court, and Jefferson County Judge Executive against Jefferson County itself); Jones v. Binion, 2011 WL 1458429, at *9 (E.D. Ky. Apr. 15, 2011) (construing claims against the Carter County Detention Center and Carter County Fiscal Court against Carter County itself). Further, since Plaintiff's actions against the Morganfield Police Department are redundant, see Fultz v. Whittaker, 187 F. Supp. 2d 695, 708 (W.D. Ky. 2001), Counts I, II, and VI must be **DISMISSED** as to it.

The Sixth Circuit has also held that a suit against an individual "in his official capacity" is essentially a suit brought directly against the local government unit. Leach v. Shelby Cnty. Sheriff, 891 F.2d 1241, 1245 (6th Cir. 1989); see Kentucky v. Graham, 473 U.S. 159, 165–66 (1985). "If an action is brought against an official of a governmental entity in his official capacity, the suit should be construed as brought against the governmental entity." Isom v. Ramsey, 2008 WL 2079408, at *2 (W.D. Ky. May 15, 2008) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58,

5

71 (1989)). Thus, the Court will construe Plaintiff's official-capacity claims against Officer Deibler against the City of Morganfield. Additionally, because Plaintiff's actions against Officer Deibler in his official capacity duplicate the action against the City of Morganfield, see Fultz, 187 F. Supp. 2d at 708, Counts I, II, and IV must be **DISMISSED** as to him.

The Court notes that in response to the Morganfield Defendants' argument for dismissal as to the Morganfield Police Department and Officer Deibler in his official capacity, Plaintiff fails to address the above-cited cases or provide countervailing authority. Thus, the Court reiterates that the Morganfield Police Department and Officer Deibler in his official capacity are not proper defendants in Counts I, II, IV, and VI. The Morganfield Defendants' summary judgment motion is **GRANTED** in this regard. The Court next turns to the Morganfield Defendants' argument that it must dismiss Plaintiff's § 1983 claims against Officer Deibler in his individual capacity and the City of Morganfield.

### COUNTS I, II, AND IV: CAUSES OF ACTION BASED ON 42 U.S.C. § 1983 AGAINST OFFICER DEIBLER IN HIS INDIVIDUAL CAPACITY

Count I (entitled "Unlawful Initiation/Continuation of Criminal Citation"), Count II (entitled "Malicious Abuse of Process"), and Count IV (entitled "Malicious Prosecution") center on Plaintiff's prosecution for "Falsely Reporting an Incident," a Class A misdemeanor under Kentucky law. See K.R.S. § 519.040. Specifically, in Counts I, II, and IV, Plaintiff alleges that the defendants violated his constitutional rights by "serving him with a criminal citations [*sic*] devoid of probable cause," "maliciously us[ing] a legal process to accomplish some ulterior purpose for which it was not designed or intended," and instituting a criminal proceeding without probable cause "with malice and/or a primary purpose other than that of bringing an offender to justice." (Compl. [DN 1] ¶¶ 66, 70, 81–85.) The Morganfield Defendants assert that these claims must be dismissed as to Officer Deibler in his individual capacity because they do not rise to the level of a constitutional violation.

6

Plaintiff counters that the claims do rise to such a level. The Court agrees with the Morganfield Defendants.

Section 1983 "is not itself a source of substantive rights," instead providing "a method for vindicating federal rights elsewhere conferred." Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). The initial step in addressing a § 1983 claim "is to identify the specific constitutional right allegedly infringed." Albright, 510 U.S. at 271 (citing Graham v. Connor, 490 U.S. 386, 394 (1989)). In this case, as the Morganfield Defendants correctly note, Plaintiff never clearly identifies the constitutional protections which he alleges the defendants violated. (Defs.' Mem. [DN 22-1] 10.) But Plaintiff seems to suggest that the defendants violated his liberty interest to be free from unwarranted prosecution without probable cause (and from improper use of legal process) under the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment. (Compl. [DN 1] ¶ 66(a)–(c); Mem. in Opp. of Morganfield Defs.' Mot. for Summ. J. [DN 34-1] 9.) The Court considers each alleged constitutional violation in turn.

**Equal Protection Clause.** Plaintiff repeatedly alleges that the defendants' actions denied him of the "equal protection of the law." (Id.) But to the extent that Plaintiff bases his § 1983 claims on the Equal Protection Clause, his claims fail. The Sixth Circuit has long been clear that "[t]o state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." Henry v. Metro. Sewer Dist., 922 F.2d 332, 341 (6th Cir. 1990) (citation omitted). Here, Plaintiff has not alleged as much. Thus, his § 1983 claims cannot be based on equal protection principles.

**Due Process Clause.** Plaintiff also alleges that the defendants' actions deprived him of "due process of law," highlighting that the Due Process Clause applies to deliberate government

decisions. However, the Court agrees with the Morganfield Defendants that Plaintiff has failed to produce sufficient evidence of a due process violation to support his § 1983 claims.

*Procedural Due Process.* The parties' arguments focus on whether Plaintiff has produced sufficient evidence of a procedural due process violation. Specifically, the Morganfield Defendants cite the Supreme Court's decision in <u>Parratt v. Taylor</u> to support their argument that Plaintiff has not alleged such a violation. 451 U.S. 527 (1981), *rev'd on other grounds*, <u>Daniels v. Williams</u>, 474 U.S. 327 (1986). In <u>Parratt</u>, the Court held that the Fourteenth Amendment should not be viewed as "a font of tort law to be superimposed upon whatever systems may already be administered by the States." <u>Id.</u> at 541. It also held that adequate post-deprivation state judicial remedies may satisfy a procedural due process claim when the claim arises from a random, unauthorized deprivation. <u>Id.</u> According to the Morganfield Defendants, even construing the facts in the light most favorable to Plaintiff, it is clear that Plaintiff's injury was caused by the random, unauthorized acts of several state defendants who acted to help Defendant Jenkins due to his extensive family and community connections. Further, since Plaintiff's injury can be remedied by Kentucky's torts of malicious prosecution and abuse of process, Plaintiff cannot invoke § 1983.

Plaintiff essentially makes two counter-arguments. First, Plaintiff argues that his injury was not caused by a random, unauthorized act because Officer Deibler and the other defendants took actions that were "deliberate, contemplated and direct." (Mem. [DN 34-1] 9.) In support, Plaintiff points to "several inconsistencies" in the record which allegedly show that the criminal citation was issued to Plaintiff "to help 'a who's who' of the county commit a fraud against someone not in their inner circle," not because probable cause existed to charge Plaintiff with "Falsely Reporting an Incident" under K.R.S. § 519.040. (<u>Id.</u> at 8–17.) Second, Plaintiff argues that regardless of whether

8

the defendants' actions were random and unauthorized, any state-court remedy would be inadequate. (Id. at 17–18.) In support, Plaintiff claims it is "not logical to think that . . . the same state court that committed this deliberate atrocious act against him, would provide a sufficient adequate post deprivation remedy." (Id.)

The Court finds the Morganfield Defendants' position more persuasive. In this case, Plaintiff has failed to produce evidence from which a rational juror could conclude that his injury was caused by anything other than the defendants' random and unauthorized acts. The Supreme Court has held that where a state cannot anticipate and prevent a state actor's wrongful act, post-deprivation state tort remedies are adequate to satisfy due process requirements. Parratt, 451 U.S. at 535–44 (holding that the state could not anticipate its employee's negligence); Hudson v. Palmer, 468 U.S. 517, 533 (1984) (extending Parratt's logic to intentional torts). Here, Plaintiff does not suggest how the state could have anticipated that an individual with strong family connections would cause wrongdoing by the state's actors. Likewise, Plaintiff does not suggest what pre-deprivation process could have protected him from a wrongful criminal investigation. Accordingly, adequate post-deprivation state judicial remedies may satisfy Plaintiff's procedural due process claim. See Parratt, 451 U.S. at 541.

Kentucky provides adequate post-deprivation remedies to redress any Fourteenth Amendment violations via the torts of malicious prosecution and abuse of process. See Lawson v. Sword, 2010 WL 2428130, at *2 (Ky. App. June 18, 2010) (noting that "Kentucky has long recognized malicious prosecution actions where the suit was instituted with malice and without probable cause"); Sprint Commc'ns Co., L.P. v. Leggett, 307 S.W.3d 109, 114 (Ky. 2010) (discussing abuse of process). Plaintiff has provided no authority to support his claim that a state-court remedy is inadequate when a plaintiff alleges that the state courts are part of some

"good-ole boy" network. Accordingly, the Court finds that Plaintiff cannot sustain his § 1983 claims on procedural due process principles. To the extent that Counts I, II, and IV rely on such, the claims are **DISMISSED.**

The Court notes that this conclusion is consistent with other cases that discuss procedural due process. "[P]rocedural due process principles protect persons from deficient procedures that lead to the deprivation of cognizable liberty interests." Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs., 640 F.3d 716, 729 (6th Cir. 2011) (citations omitted). But here, Plaintiff has neither alleged nor demonstrated that he was deprived of either adequate notice or an adequate opportunity to be heard. As other district courts in the Sixth Circuit have noted, "[a] trial (at which plaintiff was acquitted of [the] charges) is the process to which an individual charged with a crime is entitled." Saunders v. Valverde, 2012 WL 2918516, at *5 (S.D. Ohio July 17, 2012). Here, Plaintiff had a jury trial and was acquitted of the charged misdemeanor. This was the process to which he was entitled. Plaintiff has identified no deficiency in that process that would support his due process claims. The parties' briefs fail to consider whether Plaintiff's substantive due process rights were violated, instead focusing exclusively on procedural due process principles. Nevertheless, to the extent that Plaintiff intended to allege such a violation, the Court finds that his allegation fails.

*Substantive Due Process.* "Substantive due process" reflects the doctrine that "governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed . . . ." Pearson v. City of Grand Blanc, 961 F.2d 1211, 1216 (6th Cir. 1992). The Sixth Circuit has held that any governmental action that "shocks the conscience" of the court may violate substantive due process. Id. at 1217. But the Sixth Circuit "has employed a very high standard when determining whether police action shocks the conscience." Garcia v. Thorne, 2013

10

WL 1136552, at *5 (6th Cir. Mar. 19, 2013). Even construing the facts in the light most favorable to Plaintiff, the Court finds he has not met this standard. Particularly, Plaintiff's allegation that Officer Deibler issued him a criminal citation for an offense for which probable cause did not exist is unpersuasive, as probable cause did exist.

During the pendency of his criminal case, Plaintiff filed a Motion to Dismiss, claiming that Officer Deibler's criminal complaint "fail[ed] to state sufficient allegations . . . to state a claim or charge." (See Union Dist. Ct. File [DN 22-9] 33–39.) After conducting an evidentiary hearing on December 8, 2012, the trial court found there was sufficient evidence to support the charge and denied Plaintiff's motion. (Transcript [DN 22-5] 20–21.) Later, during a jury trial, Plaintiff moved for directed verdict of acquittal at the close of the prosecution's case—and renewed that motion at the close of his own case. The court denied these motions as well. (Jury Trial Transcript [DN 22-7] 89, 147.) The Morganfield Defendants argue that because the state court made these rulings, Plaintiff is precluded from arguing that his charge lacked probable cause. The Court agrees.

In determining whether a state court's adjudication of an issue has preclusive effect for an action under § 1983, the Court must apply the collateral-estoppel law of that state. Darrah v. City of Oak Park, 255 F.3d 301, 311 (6th Cir. 2001). Kentucky law provides that collateral estoppel applies to issues actually litigated in a prior action where there is identity of the parties, identity of the issues, and the prior action was tried on the merits. See Price v. Yellow Cab Co. of Louisville, 365 S.W.3d 588, 591–92 (Ky. App. 2012). As the Morganfield Defendants accurately note, Kentucky courts do not appear to have addressed whether probable cause is established when a trial judge conducts a pretrial evidentiary hearing and finds there is sufficient evidence to support a charge. Likewise, they do not appear to have addressed whether probable cause is established when

11

a trial judge denies a motion for a directed verdict of acquittal. The Court will thus turn to persuasive authority.

In Monroe v. Sigler, the Georgia Supreme Court held that "when the trial judge rules that the evidence is sufficient *as a matter of law* to support a conviction (that is, is sufficient to enable a rational trier of fact to find each and every element of the guilt of the accused beyond a reasonable doubt), . . . such a holding–unreversed and in the absence of fraud or corruption–should . . . suffice as to the existence of probable cause" for purposes of collaterally estopping a later § 1983 action for malicious prosecution. 353 S.E.2d 23, 25 (Ga. 1987) (italics in original). Likewise, in Coogan v. City of Wixom, the Sixth Circuit applied Michigan law and found that "where the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action." 820 F.2d 170, 175 (6th Cir. 1987), *overruled on other grounds*, Frantz v. Vill. of Bradford, 245 F.3d 869 (6th Cir. 2001); see Smith v. Thornburg, 136 F.3d 1070, 1077 (6th Cir. 1998) (relying on Coogan to hold that a state-court probable cause finding collaterally estopped the plaintiff from re-litigating the issue in his § 1983 malicious prosecution action). The Court finds the reasoning behind these cases compelling.

Here, the trial court conducted an evidentiary hearing and found that there was sufficient evidence to support the charge. Thus, Plaintiff was given a pretrial opportunity to raise the issue of probable cause and the trial judge found against him. Also, the trial court denied Plaintiff's motion for directed verdict of acquittal and sent the case to a jury, which presupposes a finding of probable cause. Thus, the Court finds that Officer Deibler acted with probable cause and his actions did not shock the conscience. Plaintiff has failed to sufficiently allege a substantive due process violation.

12

The Court notes that a § 1983 action is not necessarily estopped by a state court's probable cause determination if there is evidence that the officer deliberately supplied false information at the preliminary hearing. Hinchman v. Moore, 312 F.3d 198, 202–03 (6th Cir. 2002); see also Sykes v. Anderson, 625 F.3d 294, 312–13 (6th Cir. 2010) (holding an officer may be liable under § 1983 for malicious prosecution despite a state judge's probable cause finding at preliminary hearing where there is compelling evidence that the officer lied about material facts at that hearing). Here, Plaintiff seems to indicate that Officer Deibler lied about material facts. (See Pl.'s Mem. [DN 34-1] 11 (noting that Officer Deibler's KYIBRS report and criminal citation failed to mention anything about the brother-in-law).) But the criminal citation clearly states that "Butts made statements that were found to be misleading" and that a "[v]ideo was given to [Officer Deibler] by Butts that showed the individual did not intentionally mislead Butts into thinking the Bars are real . . . ." (Union Dist. Ct. File [DN 22-9] 1.) This is consistent with Officer Deibler's testimony regarding the brother-in-law. Moreover, the KYIBRS report clearly states that "Marvin told [Officer Deibler] that he was busy with other customers . . . and that his Brother-in-Law took care of the transaction with Jenkins." (Id. at 28.) Thus, the Court finds that Plaintiff's argument is without merit. To the extent that Plaintiff alleges a substantive due process violation, his claims fail.

The Court notes that its conclusions regarding whether there has been a due process violation are supported by the Supreme Court's opinion in Albright v. Oliver, 510 U.S. 266 (1994).[3] There, the Court considered a plaintiff's "liberty interest" in being "free from prosecution without probable

---

[3] While the parties' briefs do not address the Albright decision or its applicability, the Sixth Circuit has held that "it is the district court's responsibility to apply the proper legal standard, regardless of the misconceptions by the parties." Hollister v. Dayton Hudson Corp., 201 F.3d 731, 737 (6th Cir. 2000).

cause" under the Fourteenth Amendment's substantive due process clause. Id. at 269. Ultimately, the Albright plurality found that because the plaintiff's claim concerned pre-trial deprivations of liberty, he was alleging a Fourth Amendment, and not a Fourteenth Amendment, violation. Id. at 273–75. The Albright plurality went on to hold that the Fourth Amendment, not the more generalized substantive due process notion, had to be used when analyzing the plaintiff's claims. Id. The Sixth Circuit has interpreted Albright as requiring courts to treat malicious prosecution claims as Fourth Amendment violations when the gravamen of the plaintiff's complaint is continued detention without probable cause. Gregory v. City of Louisville, 444 F.3d 725, 748 (6th Cir. 2006).

A cursory review of this case reveals that it does not allege a traditional, Fourth Amendment malicious prosecution claim, as there was no continued detention without probable cause.[4] Instead, this case alleges § 1983 claims "for an injury formerly treated under the 'malicious prosecution' umbrella which does not allege, at heart, a Fourth Amendment injury." Id. at 749 n.10. The Sixth Circuit has not yet been faced with such a case. Nevertheless, the Court finds that Albright at least makes it questionable as to whether Plaintiff's § 1983 claims can be based on due process principles.

In sum, the Court finds that Plaintiff has not sufficiently alleged a constitutional violation to support his § 1983 claims. The Morganfield Defendants' motion to dismiss Counts I, II, and IV

---

[4] A Fourth Amendment seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied." Scott v. Harris, 550 U.S. 372, 381 (2007). In the present case, Plaintiff has not alleged as much. Plaintiff was never arrested, jailed, detained, required to post bond, or placed under travel restrictions. Case law from other district courts in the Sixth Circuit suggests that these facts do not rise to the level of a Fourth Amendment violation. See, e.g., Hopkins v. Sellers, 2011 WL 2173859, at *9 (E.D. Tenn. June 2, 2011) (noting that courts have "uniformly required some meaningful deprivation of liberty beyond mere summons and arraignment to support a Fourth Amendment malicious claim"); Briner v. City of Ontario, 2011 WL 866464, at *4 (N.D. Ohio Mar. 9, 2011) (noting that a "summons to appear for trial on misdemeanor charges did not amount to a seizure or detention within the meaning of the fourth amendment").

as to Officer Deibler in his individual capacity is **GRANTED**.

Alternatively, the Morganfield Defendants argue that Plaintiff's claims are barred by the doctrine of qualified immunity. Whether a defendant is entitled to qualified immunity depends on: first, whether the violation of a constitutional right has occurred; and second, whether the right "was clearly established at the time of defendant's alleged misconduct." Grawey v. Drury, 567 F.3d 302, 309 (6th Cir. 2009). Here, the Court has found that Plaintiff has not sufficiently alleged a violation of his constitutional rights. Therefore, the Court will not address the qualified immunity argument.

### COUNTS I, II, AND VI: CAUSES OF ACTION BASED ON 42 U.S.C. § 1983 AGAINST THE CITY OF MORGANFIELD

Count I (entitled "Unlawful Initiation/Continuation of Criminal Citation"), Count II (entitled "Malicious Abuse of Process"), and Count VI (entitled "Refusing/Neglecting to Prevent") all contain § 1983 claims against the City of Morganfield. The Court must analyze two issues when ruling on the City's liability: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the governmental entity is responsible for that violation. See Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992). The Morganfield Defendants argue that Plaintiff cannot prove municipal liability under this standard. They also argue that Plaintiff cannot maintain a successful failure-to-train claim. Plaintiff counters that this case "offers an over abundant amount of evidence which shows that the local government supported the unconstitutional charge," despite the fact that it has not been given an opportunity to conduct discovery to identify additional incidents of "custom" or "policy" in support of his municipal liability claim. (Pl.'s Mem. [DN 34-1] 20, 22.) Plaintiff also argues that "presenting an affidavit stating that the officer had completed state mandated officer training is not sufficient to beat an accusation of improper training or supervision." (Id. at 23.)

15

In this case, the Court has previously found that Plaintiff has failed to sufficiently allege a violation of his constitutional rights. As such, the government entity cannot be held responsible. Officer Deibler's alleged lack of training becomes a non-issue. Further, granting additional discovery for similar incidents of "custom" or "policy" becomes unnecessary. Counts I, II, and IV must be **DISMISSED** as to the City of Morganfield. The Morganfield Defendants' motion is **GRANTED**.

### B. COUNT III: CAUSE OF ACTION BASED ON 42 U.S.C. § 1985(3)

Count III of Plaintiff's Complaint alleges due process and equal protection violations based on 42 U.S.C. § 1985(3). Section 1985 creates a right to recover damages against those who conspire to interfere with another's constitutional rights. To state a claim under § 1985(3), the Sixth Circuit holds that "a plaintiff must prove (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." Johnson v. Hills & Dales Gen. Hosp., 40 F.3d 837, 839 (6th Cir. 1994). In more general terms, to state a cognizable § 1985(3) claim, "a claimant must prove both membership in a protected class and discrimination on account of it." Estate of Smithers ex rel. Norris v. City of Flint, 602 F.3d 758, 765 (6th Cir. 2010); accord Griffin v. Breckenridge, 403 U.S. 88, 102 (1971) (holding that "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action").

In this case, the Court previously dismissed Plaintiff's § 1985(3) claims against Defendant Jenkins, holding that Plaintiff did not allege facts indicating that Jenkins' actions were motivated by some class-based discriminatory animus. (Mem. Op. & Order [DN 17] 6.) The Morganfield

Defendants have now moved for summary judgment on this same ground. Plaintiff concedes that he cannot meet the elements of § 1985(3) and that the Court's previous holding equally applies to the Morganfield Defendants. (See Pl.'s Mem. [DN 34-1] 6.) Accordingly, Count III is **DISMISSED**. The Morganfield Defendants' motion is **GRANTED** with respect to it.

### C. COUNT V: CONSPIRACY TO DEFRAUD

In Count V, Plaintiff alleges that the defendants "conspired together to employ a scheme or artifice to deprive the Plaintiff of his money, and to unjustly and fraudulently enrich the Defendant David Jenkins." (Compl. [DN 1] 20.) Under Kentucky law, civil conspiracy has been defined as "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means." Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co. LLC, 277 S.W.3d 255, 260–61 (Ky. App. 2008) (citation omitted). However, "[c]ivil conspiracy is not a free-standing claim; rather, it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort." Stonestreet Farm, LLC v. Buckram Oak Holdings, N.V., 2010 WL 2696278, at *13 (Ky. App. July 9, 2010). The Morganfield Defendants argue that Plaintiff's civil conspiracy claim must be dismissed as to Officer Deibler because Plaintiff has failed to produce evidence of fraud or deception. The Court agrees.

Plaintiff clearly bases his civil conspiracy theory on the underlying tort of fraud. (See Compl. [DN 1] 20 (naming "Count V: Conspiracy to Defraud").) However, the Court finds that Plaintiff has failed to produce any evidence on which the jury could reasonably make a fraud finding. As an initial matter, the Court finds that to the extent that Plaintiff's fraud allegation is based on any affirmative misrepresentation of the bars' composition or value by Defendant Jenkins, Plaintiff's claim fails. As the Morganfield Defendants highlight, Plaintiff and his wife have testified that when

Jenkins entered Plaintiff's shop, Jenkins made no affirmative misrepresentation. When asked what Jenkins stated during the transaction, Plaintiff testified that he "wanted to know if they was [*sic*] real." (Jury Trial Transcript [DN 22-7] 127–28.) Likewise, when asked whether Jenkins in any way indicated that he believed that the bars were solid gold, Plaintiff's wife testified that "the only thing he told me is that he wanted to see what he could get out of those." (Id. at 107.) This testimony shows that Jenkins did not make any affirmative misrepresentations.[5] As such, Plaintiff's fraud allegation and, ultimately, civil conspiracy theory, cannot be based on such.

The inquiry, however, does not end here. While Plaintiff's argument is somewhat difficult to discern, it appears to the Court that he may have intended to base his civil conspiracy theory on the tort of fraud by omission. In his memorandum, Plaintiff notes that Defendant Jenkins "paid around $25 for two gold bars . . . and gladly accepted $3300.00 cash from the Plaintiff" while wanting "everyone to willingly accept the notion that he had no idea that the bars were fake." (Pl.'s Mem. [DN 34-1] 25.) But to the extent that Plaintiff's fraud allegation is based on any omission of the bars' value by Jenkins, Plaintiff's claim fails. Under Kentucky law, to prevail on a claim of fraud by omission, a plaintiff must prove that: (1) the defendant had a duty to disclose a material fact; (2) the defendant failed to disclose the fact; (3) the defendant's failure to disclose the fact induced the plaintiff to act; and (4) the plaintiff suffered actual damages. See Smith v. General Motors Corp., 979 S.W.2d 127, 129 (Ky. App. 1998). A duty to disclose is created only when a confidential or fiduciary relationship between the parties exists, or when a statute imposes such a duty, or when a defendant has partially disclosed material facts to the plaintiff but created the impression of full

---

[5] This is confirmed by Plaintiff's response, where Plaintiff states that "he never accused Defendant David Jenkins of misrepresenting the value of the gold at all." (Pl.'s Mem. [DN 34-1] 25.)

18

disclosure. A duty can also arise "from particular circumstances such as where one party to a contract has superior knowledge and is relied upon to disclose same." Id. Here, Plaintiff has not alleged that there was any fiduciary or confidential relationship between the parties, nor has he alleged that there is a statutory duty. Further, Plaintiff has failed to produce evidence indicating that Jenkins partially disclosed material facts while creating the false impression of full disclosure. Instead, Plaintiff's testimony shows that Jenkins only asked whether the bars were real—or what amount he could get for them. Likewise, it cannot be argued that Jenkins had "superior knowledge," as it was Plaintiff who had gold-testing equipment and friends to consult in the jewelry business regarding the bars' value. Plaintiff's fraud by omission allegation fails. His civil conspiracy theory cannot be based on such.

Finally, the Court notes that Plaintiff asserts that the Morganfield Defendants are "missing the point" of his civil conspiracy claim. (Pl.'s Mem. [DN 34-1] 24.) According to Plaintiff, his civil conspiracy claim is based on the fact that Officer Deibler conspired with Jenkins to get Plaintiff to accept a plea so Jenkins could use it against Plaintiff in his small claims suit as conclusive evidence of Plaintiff's wrongdoing. (Id.) But the Court finds that it is Plaintiff who has missed the point. There can be no civil conspiracy to commit fraud without an underlying fraud claim. Plaintiff's claim must be **DISMISSED**. The Morganfield Defendants' motion is **GRANTED** with respect to Count V.

### D. COUNT VII: NEGLIGENCE AND GROSS NEGLIGENCE

In Count VII, Plaintiff alleges that the defendants were negligent because they breached their duties of care "when they failed to exercise reasonable care in carrying out their responsibilities and official duties with respect to the Plaintiff." (Compl. [DN 1] ¶ 100.) To establish a prima facie case

19

of negligence, Plaintiff must prove that Defendant (1) had a duty; (2) breached that duty; (3) the breach was the proximate cause of Plaintiff's injuries; and (4) those injuries resulted in damages to the Plaintiff. Helton v. Montgomery, 595 S.W.2d 257, 258 (Ky. App. 1980). A failure to establish any one of these elements is fatal to the claim. M & T Chems., Inc. v. Westrick, 525 S.W.2d 740, 741 (Ky. 1974). A gross negligence claim also requires "an element either of malice or willfulness or such an utter and wanton disregard of the rights of others as from which it may be assumed the act was malicious or willful." Phelps v. Louisville Water Co., 103 S.W.3d 46, 51–52 (Ky. 2003). The Morganfield Defendants argue that even if Plaintiff meets his burden of proof as to the negligence and gross negligence claims, they fail since Officer Deibler is entitled to qualified official immunity protections under Kentucky law. The Court agrees.

Kentucky's seminal case on qualified official immunity is Yanero v. Davis, 65 S.W.3d 510 (Ky. 2001). In that case, the Kentucky Supreme Court held that "when sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment." Id. at 522. The Court noted that qualified official immunity "applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority." Id. (citations omitted).

In Rowan County v. Sloas, the Kentucky Supreme Court offered guidance on the distinction between discretionary acts and ministerial acts. 201 S.W.3d 469, 477 (Ky. 2006). In so doing, it held:

> Discretionary acts or functions are "those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment . . . ." We have also said that discretionary duties are those as necessarily require the exercise of reason in the

20

> adaptation of a means to an end, and discretion in determining how or whether the act shall be done or the course pursued. Discretion in the manner of the performance of an act arises when the act may be performed in one of two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it shall be performed.

Id. (citations omitted). Here, the Court finds that Officer Deibler used his discretion and judgment in making the decision to charge Plaintiff with the criminal offense. Plaintiff appears to concede as much. (Pl.'s Mem. [DN 34-1] 26 (noting that Officer Deibler [sic] discretionary actions were taken in bad faith").) Thus, the burden shifts to Plaintiff to establish by direct or circumstantial evidence that Officer Deibler's acts were done in bad faith. See Yanero, 65 S.W.3d at 523.

Plaintiff argues that Officer Deibler's actions were in bad faith, highlighting the "sequence of events" and "undeniable serious [sic] of lies told in attempt to cover up the willful, malicious and corrupt scheme to harm the Plaintiff . . . ." (Pl.'s Mem. [DN 34-1] 26.) However, the Court finds that these statements are without proof. While Plaintiff alleges that Officer Deibler was a new police officer who "would have done just about anything to fit in and run with the "who's who" of the County," (id. at 26), he has failed to produce evidence that Officer Deibler "willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive . . . ." Rowan Cnty., 201 S.W.3d at 481.

As discussed above, the trial court's rulings indicate that Officer Deibler had probable cause to criminally prosecute Plaintiff. This shows objective reasonableness—not bad faith. Moreover, the Court notes that the uncontradicted evidence is that Officer Deibler consulted Brucie Moore, the County Attorney of Union County, prior to issuing Plaintiff a criminal citation. (See Transcript [DN 22-5] 8 (showing Officer Deibler's testimony that Ms. Moore told him there were grounds to charge Plaintiff after Officer Deibler went to Ms. Moore's office, "told her what was on the video," and "asked her if the grounds were there for the charge"); Jury Trial Transcript [DN 22-7] 99–100

(showing that Plaintiff's wife testified that Officer Deibler stated that Ms. Moore said to charge Plaintiff with filing a false police report).) This also shows objective reasonableness—not bad faith.

Courts have long held that as a practical matter, police officers "must be able to rely on the advice of prosecutors" since the "judicial system depends upon this reliance." Donovan v. Briggs, 250 F. Supp. 2d 242, 257 (W.D.N.Y. 2003); see also Williams v. Fedor, 69 F. Supp. 2d 649, 677–78 (M.D. Pa. 1999) (finding that officers could rely on a district attorney's advice and believe they were not violating the plaintiff's rights by proceeding with a perjury prosecution); Halasah v. City of Kirtland, 2013 WL 2200360, at *16 (N.D. Ohio. May 20, 2013) (citing First, Seventh, Ninth, and Fourth Circuit cases which indicate that consultation with a prosecutor is a factor to be considered in evaluating whether an officer acted reasonably). Accordingly, this Court finds that Officer Deibler acted in an objectively reasonable manner. It cannot be said that Officer Deibler acted with bad faith. Officer Deibler is entitled to qualified official immunity. Count VII must be **DISMISSED** as to him.

### E. COUNT VIII: MALICIOUS ABUSE OF PROCESS

In Count VIII, Plaintiff alleges that Officer Deibler and other defendants "maliciously used a legal process to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed." (Compl. [DN 1] ¶ 106.) The Morganfield Defendants seem to argue that Plaintiff's abuse of process claim must be dismissed because it requires a showing of probable cause. (See Mem. [DN 22-1] 23–24.) However, Kentucky courts have noted that "[a]buse of process differs from malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying, process justified in itself for an end other than that which it was designed to accomplish." Williams v. Central Concrete Inc., 599 S.W.2d 460, 461 (Ky. App. 1979). Thus, in an

22

abuse of process action, "it is unnecessary for the plaintiff to prove that . . . the process was obtained without probable cause . . . ." Id. But the Court finds that Count II must still be dismissed.

Here, it is unclear what ulterior purpose Plaintiff has alleged. However, to the extent that Plaintiff argues that the process was abused because a baseless claim was filed, the Court finds this does not rise to the level of abuse of process. Partrich v. Farber, 448 Fed. App'x 526, 530 (6th Cir. 2011); Hubbard v. Gross, 199 Fed. App'x 433, 439 (6th Cir. 2006) (holding that "[a]ttempting to convict someone who is innocent is not an 'ulterior purpose' as needed to state an abuse of process claim"). Moreover, to the extent that Plaintiff argues that the process was abused because Defendants Moore and Officer Deibler conspired with Jenkins to get Plaintiff to accept some sort of plea so that Jenkins could use it against Plaintiff in his small claims suit, the Court also finds that this does not rise to the level of abuse of process.

Plaintiff has shown nothing more than an attempt by Officer Deibler to prosecute the case or get Plaintiff to plead guilty to the charged misdemeanor. "Other courts, in jurisdictions with analogous abuse of process elements, have . . . emphasized that the collateral objective requirement is not satisfied by actions taken in prosecuting a case, even if done with a vindictive or vicious motive in an effort to prevail in the prosecution." Hoffman v. Town of Southampton, 893 F. Supp. 2d 438, 449 (E.D.N.Y. 2012) (citing cases from Massachusetts, Iowa, Delaware, and the District of Columbia). Here, there has been no testimony that the defendants made any offers or inducements to Plaintiff to drop the criminal proceeding in exchange for Plaintiff's surrender of the money to Jenkins. It does not appear that Plaintiff has alleged any type of extortion. His abuse of process claim cannot prevail as a matter of law and is **DISMISSED**.

### F. COUNT IX: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In Count IX, Plaintiff alleges that Officer Deibler and the other defendants "intentionally and

deliberately inflicted emotional distress on plaintiff by maliciously prosecuting him and by slandering him." (Compl. [DN 1] ¶ 110.) In Kentucky, a claim for intentional infliction of emotional distress is also known as the tort of outrage. Humana of Ky., Inc. v. Seitz, 796 S.W.2d 1, 3 (Ky. 1990). To prevail on an outrage claim, a plaintiff must establish that: (1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous or intolerable; (3) there is a causal connection between the conduct and the plaintiff's emotional distress; and (4) the emotional distress suffered is severe. Gilbert v. Barkes, 987 S.W.2d 772, 777 (Ky. 1999); Kroger Co. v. Willgruber, 920 S.W.2d 61 (Ky. 1996). The Kentucky Supreme Court has set a high standard for a plaintiff, stating that it is "not . . . enough that the defendant has acted with an intent which is tortious . . . , or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' . . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Seitz, 796 S.W.2d at 3 (quotation omitted).

In this case, the Morganfield Defendants highlight that the tort of outrage is a "gap-filler" in Kentucky jurisprudence. In other words, where an actor's conduct amounts to the commission of an intentional tort or negligence for which recovery for emotional distress is allowed, and the conduct was not intended solely to cause extreme emotional distress in the victim, the tort of outrage will not lie. See Rigazio v. Archdiocese of Louisville, 853 S.W.2d 295, 298–99 (Ky. App. 1993). They also note that the Sixth Circuit has recognized this Kentucky rule and applied it to dismiss outrage claims in federal court. See Lee v. Hefner, 136 Fed. App'x 807, 814 (6th Cir. 2005). In response, Plaintiff cites Craft v. Rice, a case where the Kentucky Supreme Court first recognized

the tort of outrage. 671 S.W.2d 247 (Ky. 1984). However, Plaintiff ignores the holding of <u>Rigazio</u>. Moreover, while Plaintiff states that the "deliberate acts of Officer Deibler were no doubt extreme and outrageous, and an insult to our judicial system," (Pl.'s Mem. [DN 34-1] 27), the Court finds that this is simply not the case. Acting with probable cause cannot be considered "extreme and outrageous." Plaintiff's outrage claim in Count IX must be **DISMISSED** as to Officer Deibler.

### G. COUNT X: DEFAMATION

Finally, in Count X, Plaintiff alleges that the defendants "did slander and or libel Plaintiff by providing false information in the small claims complaint, and or throughout the erroneous prosecution for the purpose of getting a financial gain." (Compl. [DN 1] ¶ 118.) Under Kentucky law, a plaintiff must allege four elements to state a prima facie case of defamation: (1) defamatory language, (2) about the plaintiff, (3) that is published, and (4) that causes injury to the plaintiff's reputation. <u>Columbia Sussex Corp., Inc. v. Hay</u>, 627 S.W.2d 270, 273 (Ky. App. 1981). Truth is generally a complete defense to an action for defamation, even if the words "may have been inspired by malice or ill will," <u>Bell v. Courier-J. & Louisville Times Co.</u>, 402 S.W.2d 84, 87 (Ky. 1966).

The Morganfield Defendants argue that regardless of whether Plaintiff meets these elements, and regardless of the nature of the allegedly defamatory statements, Officer Deibler is not subject to suit. In support, the Morganfield Defendants point to both qualified and absolute privilege.

With respect to qualified privilege, the Morganfield Defendants highlight that the privilege attaches to communications "made in good faith, without actual malice, by one who believes he has a duty or an interest to a person with a corresponding duty or interest." <u>See</u> <u>Lewis v. Laurel Cnty. Sheriff's Dep't</u>, 2011 WL 3475370, at *7 (E.D. Ky. Aug. 8, 2011) (citing <u>Brewer v. Am. Nat'l Ins. Co.</u>, 636 F.2d 150, 154 (6th Cir. 1980)). Thus, when a police officer communicates to the public

about a criminal investigation, he is entitled to a qualified privilege; the matter is of interest to the community and the public. Id. Where a qualified privilege exists, it "preclude[s] any presumption[] of malice, but still leave[s] the party responsible for both falsehood and malice if affirmatively shown." Further, "[t]he condition attached to all such qualified privileges is that they must be exercised in a reasonable manner and for a proper purpose." Lewis, 2011 WL 3475370, at *7.

With respect to absolute privilege, the Morganfield Defendants highlight that Kentucky has long recognized an absolute privilege for statements made by witnesses in judicial proceedings, even if the statements are false and motivated by malice. See McClarty v. Bickel, 159 S.W. 783, 784 (Ky. 1913) (noting that "[w]here a witness willfully and maliciously gives false testimony, he is liable to prosecution for perjury or false swearing [but no] civil action will lie against him, because it is a well-settled rule in practically all jurisdictions that the testimony of a witness given in the course of a judicial proceeding is privileged and will not support a cause of action against him").

The Morganfield Defendants assert that while the statements on which Plaintiff bases his defamation claim are not clear, their nature is immaterial. If Officer Deibler made statements to the press regarding the pending investigation or charges against Plaintiff, such statements would be protected by the qualified privilege because they related to a matter of public concern. By contrast, if Plaintiff complains of Officer Deibler's statements made during the criminal trial, those statements are subject to Kentucky's absolute privilege.

Plaintiff's response is particularly difficult to discern. First, Plaintiff cites Columbia Sussex Corp. v. Hay, 627 S.W.2d 270 (Ky. App. 1981), for the proposition that falsely imputing criminal acts to another is slanderous per se. However, slander per se cases affect whether malice should be presumed—not whether a defendant is entitled to immunity. See Weinstein v. Rhorer, 42 S.W.2d

26

892, 895 (Ky. 1931). Thus, the Morganfield Defendants' immunity argument must still be addressed.

Second, Plaintiff argues without citation that defamatory statements made during judicial and legislative proceedings "are subject to absolute protection only if those statements are pertinent and relevant to those proceedings." (Pl.'s Mem. [DN 34-1] 27.) As the Morganfield Defendants note, this statement appears to be a paraphrase of Smith v. Hodges, 199 S.W.3d 185, 194 (Ky. App. 2005). In that case, the Kentucky Court of Appeals found that testimony must be pertinent and relevant to the subject of inquiry for the privilege to attach. Id. However, it is unclear how this rule applies here, as Plaintiff has failed to identify the nature of the statements that were made—let alone argue that they were somehow irrelevant to the subject of inquiry. Further, the Court of Appeals recognized that this "rule is to be applied liberally, especially to witnesses." Id.

Third, Plaintiff argues without citation that absolute privileges apply to non-complaining witnesses only, while complaining witnesses never have anything more than a qualified privilege. This Court has been unable to locate authority in support of this proposition. Nevertheless, in 2005, the Kentucky Court of Appeals cited with favor a Sixth Circuit opinion that offered the following approach to a court's determination of whether an absolute privilege exists:

> First, the occasion of the communication must be examined to determine if the statement was made "preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding." Second, a court must evaluate the content of the statement to determine if it "has some relation to a proceeding that is contemplated in good faith and under serious consideration."

Rogers v. Luttrell, 144 S.W.3d 841, 843–44 (Ky. App. 2004) (quoting Gen. Elec. Co. v. Sargent & Lundy, 916 F.2d 1119, 1127 (6th Cir. 1990). Here, it is clear that Officer Deibler's statements with respect to Plaintiff's prosecution meet this criteria. His discussions with Brucie Moore and any other witnesses would have been made preliminary to a proposed judicial proceeding—and his trial and

27

pretrial testimony was given in the course of a judicial proceeding, during the state's prosecution of Plaintiff for the misdemeanor offense. Moreover, the transcript of Officer Deibler's testimony during the proceeding shows that his statements bore a close relationship to the proceeding and the charge. Any statements made by Officer Deibler, then, qualify for the absolute privilege.

The Court notes that while Plaintiff claims that he can "provide the Court with evidence of malice and intentional falsehoods" on the part of Officer Deibler, (Pl.'s Mem. [DN 34-1] 27), he will not be given further opportunity to do so. Plaintiff should have presented this evidence to the Court in his response. In the context of surviving a summary judgment motion, "the non-moving party must be able to show 'sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy.'" Lewis v. Philip Morris Inc., 355 F.3d 515, 533 (6th Cir. 2004). Here, Plaintiff has not provided the Court with examples of the malicious and intentional falsehoods—or even the nature of the allegedly defamatory statements. Plaintiff has failed to direct the Court's attention to specific passages. He has not identified evidence of bad faith to the Court. Accordingly, Count X must be **DISMISSED**. The Morganfield Defendants' motion is **GRANTED**.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Motion for Summary Judgment [DN 22] of Defendants Geoffrey Deibler, the Morganfield Police Department, and the City of Morganfield is **GRANTED**.

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

July 5, 2013

cc: counsel of record