UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:12-CV-00114-JHM-HBB

MARVIN BUTTS                                                                                           PLAINTIFF

V.

OFFICER GEOFFREY DEIBLER, MORGANFIELD
POLICE DEPARTMENT, CITY OF MORGANFIELD,
JIMMY LYONS, DAVID JENKINS,
BRUCIE MOORE, and MEGAN RANDOLPH                                                DEFENDANTS

## M<small>EMORANDUM</small> O<small>PINION AND</small> O<small>RDER</small>

This matter is before the Court on the Summary Judgment Motion [DN 44] of Defendants Jimmy Lyons ("Lyons"), Brucie Moore ("Moore"), and Megan Randolph ("Randolph"). Fully briefed, this matter is ripe for decision. For the following reasons, the motion is **GRANTED**.

## I. B<small>ACKGROUND</small>

This controversy arises out of a dispute over the sale of two "gold" buffalo bullion bars. The dispute began on September 20, 2011, when Defendant David Jenkins visited Plaintiff's Jewelry and Repair Store and sold Plaintiff the bars for $3,300. (Compl. [DN 1] ¶ 21.) After Jenkins left the store, Plaintiff discovered that the bars were counterfeit. Plaintiff immediately called Jenkins, asking him to return the money. (Id. ¶ 24.) When Jenkins asserted that he would not return the money, Plaintiff called the Morganfield Police Department for its assistance. (Id. ¶ 25.) Officer Geoffrey Deibler was dispatched to Plaintiff's store. On his arrival, Officer Deibler called Jenkins, advising him to return the money, as failing to do so would constitute felony theft by deception. (Id. ¶ 26.) Jenkins appeared reluctant to do so. Nevertheless, he agreed to come back to Plaintiff's store and return it. (Id. ¶ 28.)

After the money's return, several events transpired that gave rise to the instant cause of action. First, Detective Lyons from the Union County Sheriff's Office called Officer Deibler, inquiring as to why he had become involved in the matter. (Id. ¶ 30; Deibler Testimony, Trial Transcript [DN 22-7] 79.) Lyons had talked to Jenkins' father-in-law and believed that Jenkins should not have been forced to return the money to Plaintiff. (Compl. [DN 1] ¶¶ 31–33; Deibler Testimony, Trial Transcript [DN 22-7] 75.) Second, Officer Deibler returned to Plaintiff's store the following day with a criminal citation, charging Plaintiff with falsely reporting an incident. (Compl. [DN 1] ¶¶ 37, 40.) According to Plaintiff's allegations, Officer Deibler told him that Moore, the County Attorney of Union County, had received a call from Jenkins. Officer Deibler also stated that Moore had "got [*sic*] ahold of the [store's surveillance video] and wanted charges pressed against Marvin Butts . . . ." (Id. ¶¶ 37-39.)[1] Officer Deibler expressed his opinion to Plaintiff that he should plead guilty to the charged misdemeanor or take a deferment. (Id. ¶ 42.) Third, Jenkins had a small claims complaint served on Plaintiff the next day for bad business and embarrassment. (Id. ¶ 44.) According to Plaintiff's theory, Moore and Officer Deibler conspired with Jenkins to serve Plaintiff a criminal citation devoid of probable cause. (Id. ¶ 66.) This was done to get Plaintiff to accept some sort of plea or deferment so that Jenkins could use it against Plaintiff in his small claims suit as conclusive evidence of Plaintiff's wrongdoing. (Id. ¶ 72.)

Randolph, the Assistant County Attorney of Union County, appeared on behalf of the Commonwealth during Jenkins' jury trial. Ultimately, the jury found that Plaintiff was not guilty of falsely reporting an incident, and Jenkins' small claims complaint was dismissed for lack of jurisdiction. (Id. ¶¶ 49, 62.) Plaintiff, however, brought this federal action against Jenkins, the

---

[1] According to Officer Deibler's testimony, Plaintiff initially informed him that the transaction occurred between Jenkins and Plaintiff's brother-in-law, who does not know how to test gold for authenticity. However, when Officer Deibler later viewed the surveillance video, he realized it was Plaintiff—not the brother-in-law—who had helped Jenkins. Officer Deibler states this was the basis for charging Plaintiff with falsely reporting an incident. (Deibler Testimony, Trial Transcript [DN 22-7] 55, 59–60, 67–68.) Plaintiff claims that he "never told Officer Deibler that his brother-in-law handled the transaction." (Mem. in Opp. to Defs.' Mot. for Summ. J. ("Pl.'s Mem.") [DN 47] 5.)

Morganfield Defendants, Moore, Lyons, and Randolph, alleging numerous causes of action. The Morganfield Defendants moved for summary judgment. The Court granted the motion. The matter is now before the Court on the summary judgment motion of Moore, Lyons, and Randolph.

## II. STANDARD OF REVIEW

Before the Court may grant a summary judgment motion, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## III. DISCUSSION

Plaintiff alleges that Lyons, Moore, and Randolph are liable under 42 U.S.C. § 1983 for the unlawful initiation and continuation of a criminal citation (Count I) and malicious abuse of

process (Count II). He also alleges that they are liable under § 1985(3) for conspiring to deprive Plaintiff of his due process and equal protection rights (Count III). In addition, Plaintiff asserts causes of action against Lyons, Moore, and Randolph for: malicious prosecution (Count IV)[2], negligence and gross negligence (Count VII), and defamation (Count X). He also asserts causes of action against Lyons and Moore—but not Randolph—for conspiracy to defraud (Count V) and intentional infliction of emotional distress (Count IX).

### A. COUNTS I, II, AND IV: CAUSES OF ACTION BASED ON 42 U.S.C. § 1983 AGAINST LYONS, MOORE, AND RANDOLPH IN THEIR INDIVIDUAL CAPACITIES[3]

Count I (entitled "Unlawful Initiation/Continuation of Criminal Citation"), Count II (entitled "Malicious Abuse of Process"), and Count IV (entitled "Malicious Prosecution") center on Plaintiff's prosecution for "Falsely Reporting an Incident," a Class A misdemeanor under Kentucky law. See K.R.S. § 519.040. Specifically, in Counts I, II, and IV, Plaintiff alleges that the defendants violated his constitutional rights by "serving him with a criminal citations [*sic*] devoid of probable cause," "maliciously us[ing] a legal process to accomplish some ulterior purpose for which it was not designed or intended," and instituting a criminal proceeding without probable cause "with malice and/or a primary purpose other than that of bringing an offender to justice." (Compl. [DN 1] ¶¶ 66, 70, 81–85.) Moore and Randolph argue that they are entitled to absolute prosecutorial immunity from these claims, as Plaintiff has challenged actions which relate to their roles as County Attorney and Assistant County Attorney. (Mem. in Supp. of Mot. for Summ. J. ("Defs.' Mem.") [DN 44-1] 3-6.) Lyons argues that Plaintiff's claims must be dismissed as to him because Plaintiff has not established a violation of his constitutional rights.

---

[2] The Court notes that Plaintiff does not specify in his complaint whether he intends this cause of action to be based on § 1983 or state-law. Lyons, Moore, and Randolph assume Plaintiff intends it to be based on § 1983, and Plaintiff does not dispute this assumption. Therefore, the Court will analyze this claim under § 1983.
[3] Plaintiff has stated that Lyons, Moore, and Randolph have been sued in their individual capacities only. (See Pl.'s Mem. [DN 47] 6.)

4

(Id. at 12-13.) Finally, Moore, Randolph, and Lyons argue that in the alternative, they are each entitled to qualified immunity on Plaintiff's § 1983 claims. (Id. at 15-16.)

**Absolute Prosecutorial Immunity.** Moore and Randolph argue that they are entitled to absolute prosecutorial immunity from Counts I, II, and IV, as Plaintiff has challenged actions which relate to their roles as County Attorney and Assistant County Attorney. "A prosecutor enjoys absolute immunity from § 1983 liability when he acts as an advocate for the government by engaging in activities 'intimately associated with the judicial phase of the criminal process.'" Rose v. Hulbert, 2012 WL 3096664, at *2 (W.D. Ky. July 30, 2012) (quoting Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976)); see Pusey v. City of Youngstown, 11 F.3d 652, 658 (6th Cir. 1993). To determine whether a prosecutor is acting within the scope of his prosecutorial duties, the Court employs a "functional approach." Burns v. Reed, 500 U.S. 478, 486 (1991). "[T]he critical inquiry is how closely related is the prosecutor's challenged activity to his role as an advocate intimately associated with the judicial phase of the criminal process." Ireland v. Tunis, 113 F.3d 1435, 1443 (6th Cir.1997) (citing Pusey, 11 F.3d at 658). Describing the conduct protected by immunity, the Supreme Court in Imbler opined that advocatory conduct includes "initiating a prosecution" and "presenting the State's case." Imbler, 424 U.S. at 431.

In this case, Plaintiff admits in his response brief that Randolph acted within the scope of her prosecutorial duties. (Pl.'s Mem. [DN 47] 8 ("Plaintiff admits that actions taken by Ms. Randolph fall squarely under prosecutorial duties."); 9 ("Plaintiff has no reason to believe that Ms. Randolph was doing anything more than her job as she was instructed.").) Thus, the Court finds that Randolph is entitled to absolute immunity, and Counts I, II, and IV are **DISMISSED** as to her. This is consistent with the "functional approach," as Plaintiff alleges only that Randolph acted as counsel in his state-court prosecution for falsely reporting an incident—and it is clear

that presenting the Commonwealth's case against Plaintiff was advocatory conduct. The parties disagree, however, as to whether Moore acted within the scope of her prosecutorial duties.

Moore argues that she acted within the scope of her prosecutorial duties. In this respect, Moore notes that Plaintiff essentially challenges her decision to bring criminal charges against him. Officer Deibler stated that prior to charging Plaintiff with falsely reporting an incident, he consulted with Moore about what he needed to do. According to Officer Deibler, Moore reviewed the evidence, as well as Kentucky law, and informed him that she would charge Plaintiff with falsely reporting an incident. (See Deibler Testimony, Trial Transcript [DN 22-7] 58-60.) Moore argues that making the decision to file criminal charges against Plaintiff was within the scope of her duties. She cites Ireland v. Tunis, 113 F.3d 1435, 1446 (6th Cir. 1997), in support of her position. There, the Sixth Circuit held that a prosecutor's decision to file a criminal complaint and seek an arrest warrant fell "squarely within the aegis of absolute prosecutorial immunity." Id. Further, Moore cites Grant v. Hollenbach, 870 F.2d 1135, 1138 (6th Cir. 1989), and Weathers v. Anderson, 2012 WL 3313805, at *2 (W.D. Ky. Aug. 13, 2012), to argue that prosecutors are even absolutely immune from claims alleging they acted wrongfully, knowingly, or maliciously in bringing false charges against a defendant.

In addition, Moore argues that Plaintiff only challenges two other aspects of her conduct. First, Plaintiff alleges that when Jenkins was attempting to decide whether he would return the money, Moore received a phone call from Jenkins while she was out grocery shopping. (Compl. [DN 1] ¶ 39.) Second, Plaintiff alleges that Moore currently serves, or has in the past served, as a board member of a local bank where Jenkins is employed. (Id. ¶ 59.) Moore argues that these allegations do not rise to the level of conduct that creates a basis for a cause of action against her.

In his response brief, Plaintiff argues that Moore is not entitled to absolute prosecutorial immunity. "A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993) (citation omitted). In other words, "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer," including "searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested," the prosecutor is not entitled to absolute immunity. Id. In this case, Plaintiff argues that the evidence shows that Moore's conduct of giving legal advice to Officer Deibler was investigatory in nature.

In support of this argument, Plaintiff highlights Officer Deibler's testimony that he sought advice from Moore, prior to initiating criminal proceedings against Plaintiff. In specific, Officer Deibler stated that he took the surveillance video to Moore and that she searched through a law book and told him he could charge Plaintiff with falsely reporting an incident. (Deibler Testimony, Trial Transcript [DN 22-7] 58-60.) Plaintiff argues that this conduct of offering legal advice to Officer Deibler was similar to the prosecutor's conduct in Burns v. Reed, 500 U.S. 478 (1991), where the Supreme Court held that the prosecutor was not entitled to absolute immunity.

In Burns, the Supreme Court held that only qualified immunity was appropriate as to a prosecutor's conduct of "[a]dvising the police in the investigative phase of a criminal case." Id. at 493. More specifically, the prosecutor in Burns had instructed the police that they could interview a murder suspect under hypnosis—and that hypnosis was an acceptable interrogation technique. Id. at 481. Thereafter, when the hypnosis was complete, the prosecutor advised the police that in light of the information elicited from the hypnosis, they "probably had probable cause" to arrest the suspect. Id. The Court held it would be "incongruous to allow prosecutors to

7

be absolutely immune from liability for giving advice to the police, but to allow police officers only qualified immunity for following the advice." Id. at 495. Plaintiff argues that a similar conclusion denying absolute immunity is warranted here, as Moore gave legal advice to Officer Deibler regarding whether charges should be brought against Plaintiff. Plaintiff notes Officer Deibler's testimony, in which he stated that he informed Plaintiff that Moore indicated Plaintiff should be charged. (Deibler Testimony, Trial Transcript [DN 22-7] 60.) Plaintiff also notes the testimony of his wife. She stated that Officer Deibler said, "I've got to do what Brucie Moore says do. She says, jump, I've got to jump." (Id. at 100.)

The Court finds that in this case, it unnecessary to decide whether Moore is entitled to absolute immunity for Plaintiff's § 1983 claims. This is because the Court's prior Memorandum Opinion and Order [DN 37] makes clear that Moore is entitled to qualified immunity under the facts of this case. Qualified immunity shields government officials from liability in § 1983 cases "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When analyzing claims of qualified immunity, courts use a two-part test: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." Estate of Carter v. City of Detroit, 408 F.3d 305, 310-11 (6th Cir. 2005) (citation omitted). Plaintiff argues that the "conduct of fabricating a story or a set of lies in order to file a false criminal citation against someone is unlawful, and unconstitutional," and that Moore is not entitled to qualified immunity. (Pl.'s Mem. [DN 47] 11.)

However, as noted in the Court's previous Memorandum Opinion and Order [DN 37], Plaintiff has failed to produce sufficient evidence of an equal protection violation or a due process

violation to support his § 1983 claims. (See Mem. Op. & Order [DN 37] 6-15.) Plaintiff's § 1983 claims cannot be based on the Equal Protection Clause, as he has not alleged that the defendants intentionally discriminated against him because of membership in a protected class. (See id. at 7.) Likewise, Plaintiff's § 1983 claims cannot be based on the Due Process Clause, as the Court found that with respect to procedural due process, Kentucky "provides adequate post-deprivation remedies" to address Plaintiff's claims, and Plaintiff has "failed to produce evidence from which a rational juror could conclude that his injury was caused by anything other than the defendants' random and unauthorized acts." (Id. at 9.) With respect to substantive due process, the Court found that because the state-court judge ruled that evidence was sufficient as a matter of law to support a conviction of Plaintiff for falsely reporting an incident, this holding sufficed as to the existence of probable cause for the purpose of collaterally estopping Plaintiff's § 1983 claims. (See id. at 10-15.) Clearly, if there is no evidence that Plaintiff's constitutional rights are violated, Moore's conduct cannot be deemed to have violated Plaintiff's clearly established constitutional rights. Thus, qualified immunity shields Moore from liability for her conduct of advising Officer Deibler which charge could be brought against Plaintiff. In other words, while arresting (and prosecuting) a person without probable cause is clearly a constitutional violation, the circumstances here show that there was probable cause for Plaintiff's arrest. Moore is entitled to summary judgment as to Plaintiff's § 1983 claims. Counts I, II, and IV are **DISMISSED** as to her.

**Violation of Constitutional Rights.** Lyons argues that Counts I, II, and IV must also be dismissed as to him, as Plaintiff has not established a violation of any of his constitutional rights. Again, the Court notes that in its previous Memorandum Opinion and Order [DN 37], it held that Plaintiff has failed to produce sufficient evidence of an equal protection violation or a due process

violation to support his § 1983 claims. Therefore, Lyons is also entitled to summary judgment as to Plaintiff's § 1983 claims in Counts I, II, and IV. These claims are accordingly **DISMISSED**.

The Court notes that in his complaint, with respect to Lyons, Plaintiff refers solely to a phone call that Officer Deibler received from Lyons on the date of the "gold bar" transaction. (Compl. [DN 1] 3, ¶¶ 32-35.) Plaintiff alleges that in this phone call, Lyons stated his opinion to Officer Deibler that he did not believe Jenkins should have had to give Plaintiff the money back. Plaintiff also alleges that Lyons told Officer Deibler that the "gold bar" transaction was a civil matter and that he should not have gotten involved. (See id.) During a suppression hearing in the state case, Lyons acknowledged that he made the call in question. (Supp. Hearing Transcript [DN 22-6] 17.) He denied that he told Officer Deibler what to do; instead, he stated that he only advised Officer Deibler that the situation seemed to him like a civil matter. (See id. at 17-18.)

Officer Deibler has acknowledged that Lyons did not advise him to take any specific action with regard to Jenkins or Plaintiff. (Transcript [DN 25-5] 11.) Lyons argues, and the Court agrees that this cannot possibly rise to the level of a violation of Plaintiff's constitutional rights. As Lyons notes, any alleged phone conversation "would only have significance as to the issue of whether or not to charge Defendant David Jenkins with a state crime. It had nothing to do with the charges filed against Plaintiff Marvin Butts." (Reply of Defs. to Pl.'s Resp. [DN 49] 4.) Plaintiff does not dispute that the call was unrelated to whether charges should be filed against him. He states that Lyons' call "was for the sole purpose of informing [Officer Deibler] that he didn't think [Officer Deibler] should make [Jenkins] give the money back." (Pl.'s Resp. [DN 47] 13.) Thus, the Court holds that Lyons' actions did not violate Plaintiffs' constitutional rights.

**Qualified Immunity.** Because the Court has already dismissed Counts I, II, and IV as to Moore, Randolph, and Lyons, it need not further address their qualified immunity argument.

### B. COUNT III: CAUSE OF ACTION BASED ON 42 U.S.C. § 1985(3)

Count III of Plaintiff's Complaint alleges due process and equal protection violations based on 42 U.S.C. § 1985(3). To state a § 1985(3) claim, "a claimant must prove both membership in a protected class and discrimination on account of it." Estate of Smithers *ex rel.* Norris v. City of Flint, 602 F.3d 758, 765 (6th Cir. 2010); Griffin v. Breckenridge, 403 U.S. 88, 102 (1971) (holding that "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action"). Here, the Court dismissed Plaintiff's § 1985(3) claim against Jenkins and the Morganfield Defendants, holding that Plaintiff did not allege facts indicating that the defendants' actions were motivated by some class-based discriminatory animus. (Mem. Op. & Order [DN 17] 6; Mem. Op. & Order [DN 37] 16-17.)

In their summary judgment motion, Lyons, Moore, and Randolph have moved to dismiss Count III on this same ground. (Defs.' Mem. [DN 44-1] 9.) In his response brief, Plaintiff does not argue that he can satisfy the elements of § 1985(3). As such, the Court's previous holding equally applies to the Lyons, Moore, and Randolph. Count III is **DISMISSED**.

### C. STATE-LAW CLAIMS AGAINST RANDOLPH AND MOORE

As noted above, Plaintiff has also brought several state-law claims against Randolph and Moore. In specific, Plaintiff brings claims of negligence and gross negligence (Count VII) and defamation (Count X) against them. He also brings a conspiracy to defraud claim (Count V) and an intentional infliction of emotional distress claim (Count IX) against Moore—but not against Randolph. Randolph and Moore argue that they are entitled to dismissal of these claims based on absolute or qualified immunity, as Kentucky law recognizes immunity for prosecutors acting within the scope of their duties and office. See McCollum v. Garrett, 880 S.W.2d 530, 535 (Ky. 1994); Jefferson Cnty. Commonw. Attorney's Office v. Kaplan, 65 S.W.3d 916 (Ky. 2001);

Howell v. Sanders, 668 F.3d 344, 355 (6th Cir. 2012) (recognizing that Kentucky also uses the "functional approach" in determining the line between absolute immunity for a prosecutor's actions taken as an advocate and only qualified immunity for those taken as an investigator).

As noted above, Plaintiff has admitted that Randolph is entitled to absolute prosecutorial immunity for her actions in the prosecution of Plaintiff. (Pl.'s Mem. [DN 47] 8 ("Plaintiff admits that actions taken by Ms. Randolph fall squarely under prosecutorial duties."); 9 ("Plaintiff has no reason to believe that Ms. Randolph was doing anything more than her job as she was instructed.").) Therefore, Plaintiff's state-law negligence and gross negligence claims (Count VII) and defamation claim (Count X) are **DISMISSED** as to Randolph.

Also, the Court finds that regardless of whether Moore is entitled to absolute prosecutorial immunity for her actions, she is entitled to qualified immunity for such actions under Kentucky law. In the Court's previous Memorandum Opinion and Order [DN 37], the Court relied on the state court's holdings to find that there was probable cause to initiate charges against Plaintiff. The evidence shows that Moore used her discretion and judgment in advising Officer Deibler of her belief that Plaintiff should be charged with falsely reporting an incident. She was objectively reasonable in making this advisement, as there was probable cause to support a charge. Plaintiff has failed to set forth sufficient evidence that Moore acted in "bad faith." Therefore, Plaintiff's negligence and gross negligence claims (Count VII), defamation claim (Count X), conspiracy to defraud claim (Count V), and intentional infliction of emotional distress claim (Count IX) are **DISMISSED** as to Moore. This leaves Plaintiff's state-law claims against Lyons.

### D. COUNT V: CONSPIRACY TO DEFRAUD

In Count V, Plaintiff alleges that Moore, Lyons, Officer Deibler, and Jenkins "conspired together to employ a scheme or artifice to deprive the Plaintiff of his money, and to unjustly and

fraudulently enrich the Defendant David Jenkins." (Compl. [DN 1] ¶¶ 87-88.) Under Kentucky law, civil conspiracy is defined as "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means." Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co. LLC, 277 S.W.3d 255, 260–61 (Ky. App. 2008) (citation omitted). "[C]ivil conspiracy is not a free-standing claim; rather, it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort." Stonestreet Farm, LLC v. Buckram Oak Holdings, N.V., 2010 WL 2696278, at *13 (Ky. App. July 9, 2010). Lyons argues that Plaintiff's civil conspiracy claim must be dismissed as to him because Plaintiff has failed to produce evidence of fraud or deception.

More specifically, Lyons argues that Plaintiff's civil conspiracy claim must be dismissed since he has not met his burden regarding "any affirmative misrepresentations on the part of . . . Lyons as to the 'gold bars' in question, nor has Plaintiff alleged or established a claim based on fraud by omission." (Defs.' Mem. [DN 44-1] 9-10.) In the Court's prior Memorandum Opinion and Order [DN 37], the Court granted the Morganfield Defendants' motion with respect to this claim, based on its finding that Plaintiff failed to produce evidence of fraud or deception—and that there could be no civil conspiracy to defraud claim without an underlying fraud claim. (Mem. Op. & Order [DN 37] 17-19.) The Court specifically held that Jenkins did not make any affirmative misrepresentations about the bars' composition or value. (See id. at 17-18.) The Court also held that Plaintiff could not prevail on a fraud by omission claim, as a duty to disclose is created only when a confidential or fiduciary relationship between the parties exists, or when a statute imposes a duty, or when a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure. (Id. at 18-19.) The Court finds these conclusions remain true with respect to Lyons. Therefore, Count V must be **DISMISSED** as to him.

The Court notes that in his response brief, Plaintiff argues that there is evidence of the conspiracy because Jenkins called Moore on her personal cell phone, and called his father-in-law to get Lyons involved as well—all in an effort to find a way to keep the money. (See Pl.'s Mem. [DN 47] 9-10.) This evidence, however, does not change the Court's finding that Plaintiff failed to produce evidence of fraud or deception. The fact remains that Jenkins did not affirmatively misrepresent the bars' composition or value. Further, this evidence does not change the fact that under Kentucky law, there can be no civil conspiracy to defraud claim without an underlying fraud claim. Lyons is entitled to summary judgment on Plaintiff's conspiracy claim.

### E. COUNT VII: NEGLIGENCE AND GROSS NEGLIGENCE

In Count VII, Plaintiff alleges that Lyons, Moore, and Randolph were negligent because they breached their duties of care "when they failed to exercise reasonable care in carrying out their responsibilities and official duties with respect to the Plaintiff." (Compl. [DN 1] ¶ 100.) To establish a prima facie case of negligence, Plaintiff must prove that Defendant (1) had a duty; (2) breached that duty; (3) the breach was the proximate cause of Plaintiff's injuries; and (4) those injuries resulted in damages to the Plaintiff. Helton v. Montgomery, 595 S.W.2d 257, 258 (Ky. App. 1980). A failure to establish any one of these elements is fatal to the claim. M & T Chems., Inc. v. Westrick, 525 S.W.2d 740, 741 (Ky. 1974). A gross negligence claim also requires "an element either of malice or willfulness or such an utter and wanton disregard of the rights of others as from which it may be assumed the act was malicious or willful." Phelps v. Louisville Water Co., 103 S.W.3d 46, 51–52 (Ky. 2003). Lyons argues that Plaintiff has failed to establish the elements of negligence or gross negligence. Further, he argues that even if Plaintiff meets his burden as to the negligence and gross negligence claims, Count VII must be dismissed because he is entitled to qualified official immunity. (Id. at 10.)

In the Court's previous Memorandum Opinion and Order [DN 37], it held that Officer Deibler was entitled to qualified immunity, as the state trial court's rulings indicate that Officer Deibler had probable cause to criminally prosecute Plaintiff. (Mem. Op. & Order [DN 37] 21.) The Court held that the evidence showed objective reasonableness—not bad faith. Here, the Court can make similar findings concerning Lyons. In this respect, the Court turns to Kentucky's seminal case on qualified official immunity: Yanero v. Davis, 65 S.W.3d 510 (Ky. 2001). There, the Kentucky Supreme Court held that "when sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment." Id. at 522. The Court noted that qualified immunity "applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority." Id. (citations omitted).

In Rowan County v. Sloas, the Kentucky Supreme Court noted the distinction between discretionary acts and ministerial acts, holding:

> Discretionary acts or functions are "those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment . . . ." We have also said that discretionary duties are those as necessarily require the exercise of reason in the adaptation of a means to an end, and discretion in determining how or whether the act shall be done or the course pursued. Discretion in the manner of the performance of an act arises when the act may be performed in one of two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it shall be performed.

201 S.W.3d 469, 477 (Ky. 2006) (citations omitted). Here, the Court finds that Lyons used his discretion and judgment in deciding to call Officer Deibler and speak with him about becoming involved in the "gold bar" transaction. Therefore, the burden shifts to Plaintiff to establish that Lyons in bad faith. Yanero, 65 S.W.3d at 523. Plaintiff cannot meet this burden.

Plaintiff appears to argue that Lyons acted in bad faith because he fabricated "a story or set of lies in order to file a false criminal citation" against Plaintiff. (Pl.'s Mem. [DN 47] 11.) However, the Court finds that these statements are without proof. Plaintiff has failed to produce evidence that Lyons "willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive . . . ." Rowan Cnty., 201 S.W.3d at 481. Instead, Plaintiff has only shown that Lyons called Officer Deibler to express his opinion that Jenkins should not have been expected to return the money to Plaintiff. As discussed in this Court's previous Memorandum Opinion and Order [DN 37], the state trial court's rulings indicate that Officer Deibler had probable cause to criminally prosecute Plaintiff. (Mem. Op. & Order [DN 37] 21.) This shows that Officer Deibler was objectively reasonable in his actions; Lyons' phone call expressing his opinion cannot be said to have impacted Officer Deibler's later decision to charge Plaintiff with falsely reporting an incident. After all, Lyons was not an investigating officer in the matter.

The Court finds that if anything, the call between Lyons and Officer Deibler impacted whether Jenkins should be charged—and whether Jenkins should have been required to return the money. It cannot be said that Lyons acted in bad faith. Regardless of whether there is sufficient evidence of negligence or gross negligence, Count VII must be **DISMISSED** as to Lyons. He is entitled to qualified immunity. Plaintiff concedes as much, noting that his state-law claims against Lyons hinge on whether probable cause existed at the time the charge against Plaintiff was initiated. (Pl.'s Mem. [DN 47] 16.)

### F. COUNT IX: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In Count IX, Plaintiff alleges that Lyons and Moore, and other defendants, "intentionally and deliberately inflicted emotional distress on plaintiff by maliciously prosecuting him and by slandering him." (Compl. [DN 1] ¶ 110.) In Kentucky, to prevail on an outrage claim, a plaintiff

must show that: (1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous or intolerable; (3) there is a causal connection between the conduct and the plaintiff's emotional distress; and (4) the emotional distress suffered is severe. See Gilbert v. Barkes, 987 S.W.2d 772, 777 (Ky. 1999); Kroger Co. v. Willgruber, 920 S.W.2d 61 (Ky. 1996). The Kentucky Supreme Court has set a high standard for a plaintiff, stating that it is "not . . . enough that the defendant has acted with an intent which is tortious . . . , or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' . . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Humana of Ky., Inc. v. Seitz, 796 S.W.2d 1, 3 (Ky. 1990) (quotation omitted).

Here, Lyons argues that he is entitled to summary judgment on this issue for the same reasons that the Morganfield Defendants were granted summary judgment in the Court's prior Memorandum Opinion and Order [DN 37]. In that Memorandum Opinion and Order, the Court held that pursuing an action against Plaintiff, with probable cause, cannot be considered "extreme and outrageous." (Mem. Op. & Order [DN 37] 24.) Here, Plaintiff argues that Lyons was involved "in giving advice to the police officer" and "in initiating and pursuing a cause [*sic*] devoid of probable cause." (Pl.'s Mem. [DN 47] 16.) The Court finds that this is not the case. While Lyons did call Officer Deibler, there is no indication that this call had any impact on the charging of Plaintiff with falsely reporting an incident. If anything, the call impacted Officer Deibler's investigation and decision regarding whether Jenkins should be charged—and whether Jenkins should be required to return to the money to Plaintiff. Further, as the Court has found

that there was probable cause, Lyons was clearly not involved in initiating and pursuing an action devoid of probable cause. The Court agrees with Lyons. Count IX is **DISMISSED**.

### G. COUNT X: DEFAMATION

Finally, in Count X, Plaintiff alleges that Lyons, Moore, and Randolph "did slander and or libel Plaintiff by providing false information in the small claims complaint, and or throughout the erroneous prosecution for the purpose of getting a financial gain." (Compl. [DN 1] ¶ 118.) Lyons, Moore, and Randolph argue that Plaintiff has failed to state a claim for which relief can be granted. (See Defs.' Mem. [DN 44-1] 11-12.)

Under Kentucky law, a plaintiff must allege four elements to state a prima facie case of defamation: (1) defamatory language, (2) about the plaintiff, (3) that is published, and (4) that causes injury to the plaintiff's reputation. Columbia Sussex Corp., Inc. v. Hay, 627 S.W.2d 270, 273 (Ky. App. 1981). Truth is generally a complete defense to an action for defamation, even if the words "may have been inspired by malice or ill will," Bell v. Courier-J. & Louisville Times Co., 402 S.W.2d 84, 87 (Ky. 1966). Lyons argues that Plaintiff has failed to identify the full extent of any statement alleged to be defamatory. The complaint only alleges that Plaintiff's name "for 10 months repeatedly appeared in the local newspaper" for falsely reporting an incident—and that the communication "was per se slander in that it alleged that the Plaintiff committed a crime in the course of running his business." (Compl. [DN 1] ¶¶ 121, 123.) Further, Lyons states that to the extent Plaintiff's defamation claim is based on his testimony in the state-court criminal prosecution against Plaintiff, Plaintiff is not entitled to recover from him. He notes that Kentucky law has long been that there is an absolute privilege for statements made by witnesses in judicial proceedings, regardless of whether the statements were false or motivated

18

by malice. McClarty v. Bickel, 159 S.W. 783, 784 (Ky. 1913). Finally, Lyons argues that the existence of probable cause defeats Plaintiff's defamation claim. (Defs.' Mem. [DN 44-1] 11.)

In the Court's previous Memorandum Opinion and Order [DN 37], the Court held that Officer Deibler's allegedly defamatory statements regarding Plaintiff's prosecution were entitled to absolute privilege, as his discussions with Moore and any other witnesses "would have been made preliminary to a proposed judicial proceeding—and his trial and pretrial testimony was given in the course of a judicial proceeding, during the state's prosecution of Plaintiff for the misdemeanor offense." (Mem. Op. & Order [DN 37] 27-28.) The Court finds that here, the same holding applies to any statements made by Lyons.

Plaintiff begins his defamation discussion by highlighting Lyons' in-court testimony. Lyons stated that he does not like pawn shops or the types of jewelry stores that buy and sell gold. (Supp. Hearing Transcript [DN 22-6] 21-22.) In specific, Lyons was asked whether he told Plaintiff's counsel that he "did not like pawn shops or the type of jewelry store, buy-sell gold places, in this county." He responded that he did make such a statement. He further commented:

> And it's not just this county; it's all counties. People steal jewelry. They take it to these pawn shops. They melt it down. They don't keep records. They don't care who they buy stuff from, whether it's stolen or not. So in the end, the victims usually lose and they don't feel that they're responsible for what other people do. So no, I – I really don't. And – and that – and that goes along with recycling centers and all that. You know, for a man who – as a detective, I have countless people come in saying this is stolen off my property, this is stolen off my property. And – and they sit up there and buy this stuff knowing good and well that the person that's selling it to them does not have a right to that property. And they don't have any concerns as far as asking if they have a right to it. They just take it and say we're not responsible. So no, I don't.

(Id.) Plaintiff argues that there can be no testimonial immunity for these statements. According to Plaintiff, testimonial immunity only applies to testimony regarding the crime, or testimony applicable to the case at hand; it does not protect rants of an individual not related to the charge.

19

(Pl.'s Mem. [DN 47] 14-17.) Plaintiff argues that the statements are defamatory, as Lyons was directly attacking Plaintiff's character. Also, Plaintiff argues that while the defendants have made several false statements in court, the "overarching one" is that Lyons "insinuated to the Court that the gold bars could be real." (Id. at 15.)

In Smith v. Hodges, the Kentucky Court of Appeals found that testimony must be pertinent and relevant to the subject of inquiry for the privilege to attach. 199 S.W.3d 185, 194 (Ky. App. 2005). Here, Lyons' statements clearly were pertinent and relevant to the subject of inquiry, as the testimony was provided by Lyons in response to questions by Plaintiff's counsel in the criminal case. (See Supp. Hearing Transcript [DN 22-6] 21.) As Lyons notes in his reply brief, Plaintiff's counsel in the criminal case is the same as his counsel in this federal case. Obviously, she thought the questioning was pertinent and relevant to the subject of inquiry, as she solicited the testimony to which an objection is now made. Lyons is protected by absolute immunity for any testimony he provided in the state-court proceeding. Count X is **DISMISSED** as to Lyons. In sum, the Court finds that dismissal is appropriate with respect to all claims brought by Plaintiff against Lyons, Moore, and Randolph in this action. The summary judgment motion of Lyons, Moore, and Randolph [DN 44] is **GRANTED** in all respects.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Summary Judgment Motion [DN 44] of Defendants Jimmy Lyons, Brucie Moore, and Megan Randolph is **GRANTED**.

*Joseph H. McKinley*

Joseph H. McKinley, Jr., Chief Judge
United States District Court

June 12, 2014

cc: counsel of record